IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PATRICK F. ANDREWS,

    Plaintiff,

v.                                    Civil Action No. 5:10CV113
                                                    (STAMP)

JAMES N. CROSS, Warden,
ROY C. CHEATHAM, Assistant Warden,
THOMAS E. BERGAMI, Captain,
ALBERT VERO, Lieutenant,
ERIC GRIFFIN, Counselor,
LEO REILLY, Officer and
ERIC PHILLIPS, Officer,

    Defendants.

**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE**

I.   Background

On November 3, 2010, the pro se[1] plaintiff, a federal prisoner incarcerated at USP Hazelton, filed this civil rights action pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).  The complaint states causes of action against the defendants in their individual capacity and alleges that the defendants were deliberately indifferent to the cruel and unusual punishment to which they subjected the plaintiff when he was kept in a multipurpose room in the Special Housing Unit ("SHU") at USP Hazelton for 44 days, in

---

[1]"Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer.  Black's Law Dictionary 1341 (9th ed. 2009).

violation of prison policy.  He alleges that he was given only a mattress on the floor in the multipurpose room, that the room did not have running water, and that he was forced to toilet in a hospital urinal and a milk crate lined with plastic bags.  He argues that these conditions were degrading and amount to cruel and unusual punishment which resulted in not only mental anguish, but serious medical needs to which the defendants were deliberately indifferent.  Further, the plaintiff claims that in connection with his assignment to the multipurpose room, the defendants verbally abused him and threatened him with coercive force.

   The defendants acknowledge that the plaintiff was kept in the multipurpose room for 44 days, but argue that this was not for punitive reasons, but was the necessary result of overcrowding and the plaintiff's continued refusal to be placed in a cell with a cell mate.  They also acknowledge that the multipurpose room did not have running water, and that the plaintiff's toileting and bedding were as he describes it, but that such conditions did not violate the plaintiff's constitutional rights.  Finally, the defendants deny that they were deliberately indifferent to any serious medical need of the plaintiff and also deny that they used excessive force against him.

   The complaint was referred to United States Magistrate Judge James E. Seibert for initial review and report and recommendation pursuant to Local Rule of Prisoner Litigation Procedure 2.  After

a preliminary review, the magistrate judge directed the defendants to file a response, to which the defendants responded with a motion to dismiss or, in the alternative, for summary judgment. The plaintiff responded to the motion following the issuance of a Roseboro[2] notice, and Magistrate Judge Seibert entered a report recommending that the defendants' motion to dismiss or, in the alternative, motion for summary judgment be granted and that this civil action be dismissed with prejudice.

The plaintiff filed objections to the magistrate judge's recommendations, arguing that he utilized the incorrect standard in analyzing whether dismissal or summary judgment were appropriate. The plaintiff also reiterates many of the arguments made in his complaint. For the reasons set forth below, this Court finds that the report and recommendation by the magistrate judge must be affirmed and adopted in its entirety, and this civil action be dismissed with prejudice.

## II.  Legal Standard

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a de novo review of any portion of the magistrate judge's recommendation to which objection is timely made. Because the plaintiff filed objections to the report and recommendation, the magistrate judge's recommendation will be reviewed de novo.

---

[2] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (finding that the court must inform a pro se plaintiff of his right to file material in response to a motion for summary judgment).

III. <u>Discussion</u>

A. <u>Excessive Force</u>

The magistrate judge first found that dismissal in favor of the defendants was appropriate with regard to the plaintiff's excessive force claim because, as a matter of law, the plaintiff has failed to allege any activity against the defendants which rises to the level of excessive force. This Court agrees.[3] It is well settled law that verbal threats and harassment against inmates by prison officials, without more, cannot rise to the level of an Eighth Amendment violation. <u>Siglar v. Hightower</u>, 112 F.3d 191, 193 (5th Cir. 1997); <u>McBride v. Deer</u>, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001). Here, the plaintiff argues that defendants Bergami and Vero threatened to spray the plaintiff with mace if he did not "cuff up" to move to the multipurpose room. He also alleges that they spoke harshly to him with regard to his request to not be placed with a cell mate and this subsequent reassignment. However, there is no allegation that either of these defendants followed through with any threats of excessive force, or that they used any physical force against him whatsoever. Therefore, these Eighth

---

[3]The magistrate judge discusses the appropriateness of physical force used against this plaintiff based upon his violent past. However, this Court is unable to find any claim by this plaintiff that any of the defendants used physical force against him. To the extent that this Court has overlooked such a claim, based upon the plaintiff's medical and disciplinary history which has been provided to this Court, and the magistrate judge's report, this Court agrees with the magistrate judge on this point as well and dismisses any such claims.

Amendment claims against defendants Bergami and Vero must be dismissed.

B.  Deliberate Indifference

    1.  Conditions in Multipurpose Room

Magistrate Judge Seibert also found that the plaintiff has failed to state a claim for deliberate indifference to cruel and unusual punishment under the Eighth Amendment because the conditions which the plaintiff alleges existed during his housing in the multipurpose room do not qualify as constitutional deprivations.  Again, this Court agrees with the magistrate judge.  The plaintiff alleges that the multipurpose room in which he was housed did not have running water, that he was forced to defecate in a milk crate with a plastic liner and urinate in a hospital urinal, that his bed consisted of only a mattress on the floor, and that on one occasion, the defendants allowed a bag of feces to remain in the room with the plaintiff overnight.

While the Eighth Amendment requires that prisoners have adequate access to basic life necessities while in prison, they are not guaranteed privacy or comfort in their accommodations.  Rhodes v. Chapman, 452 U.S. 337, 346-47 (1981).  In order to establish a cause of action alleging that conditions of confinement have risen to the level of a constitutional deprivation, a plaintiff must allege (1) that the deprivation was objectively "sufficiently serious" to qualify as a denial of "'the minimal civilized measure

of life's necessities;'" and (2) that prison officials subjectively acted with culpability, or "deliberate indifference" to the conditions.  Wilson v. Seiter, 501 U.S. 294, 297-99 (quoting Rhodes, 452 U.S. at 347).

The plaintiff is entitled to the basic necessities of human life while incarcerated.  These include adequate food, clothing, shelter, sanitation, medical care and personal safety.  This Court agrees with the magistrate judge that he was provided all of these things while housed in the multipurpose room.  The plaintiff argues mainly that he was deprived of adequate sanitation and was deprived of a bed.  However, simply because the plaintiff's mattress was on the floor and he was unhappy with the makeshift toilet that he was provided does not amount to a deprivation of sanitary living conditions.  It appears that the plaintiff's chief complaints are that it was demeaning to have no privacy when toileting, and uncomfortable to use the makeshift toilet.  He also complains that after using the makeshift toilet, the smell in the room was unpleasant.  None of these complaints amount to unconstitutionally unsanitary conditions.  Privacy in using the toilet, comfort, and a pleasant-smelling cell are not guaranteed to inmates by the constitution.  Insofar as the plaintiff complains that a bag of feces was left in the room for one night on a single occasion, this Court cannot find that this single event can serve to raise the conditions to a constitutional deprivation.  Thus, this Court

affirms the position of the magistrate judge that the plaintiff has failed to show that the conditions in the multipurpose room constituted cruel and unusual punishment.

Also, although it is true, as the plaintiff points out, that penal measures taken, even if not rising to the level of "cruel and unusual" can be deemed Eighth Amendment violations if they are "totally without penological justification." Gregg v. Georgia, 428 U.S. 153, 183 (1976).  The plaintiff argues that this was the case here, because he was not actually a security risk, but was instead being persecuted as a result of a murder investigation that was ongoing against the plaintiff at the time resulting from an inmate death during an altercation.

However, it seems clear from the record that the plaintiff's transfer to the multipurpose room was not penal in nature, but was rather the defendants' best efforts to deal with overcrowding in the SHU at the time while simultaneously honoring the plaintiff's request to not have a cell mate.  This Court notes that prison officials have a duty to "take reasonable measures to guarantee the safety of all inmates."  Hudson v. Palmer, 468 U.S. 517, 526-27 (1984).  It appears that the defendants were honoring this duty in transferring the plaintiff to the only "cell" available without a cell mate after he refused to be housed with a cell mate who he determined to be a "snitch."

The plaintiff further avers that the defendants were deliberately indifferent to the conditions in the multipurpose room, and cites statements made by several of the defendants which acknowledge their awareness that the multipurpose room was without running water, and that the plaintiff was provided with a milk crate and a hospital urinal for purposes of toileting, as evidence of this contention. The plaintiff also alleges that he gave defendant Cross a letter detailing the conditions in the multipurpose room, and that no steps were taken to remedy his complaints. The plaintiff further claims that he informed defendants Griffin, Cross and Cheatham that he was suffering from "pain" and "suicidal thoughts" as a result of his confinement, and that on the occasion when a bag of feces was allegedly left in the room overnight, the plaintiff had requested of defendant Phillips that it be removed in the evening, and defendant Phillips affirmatively refused this request.

Though the plaintiff may be able to establish that the defendants were aware of the conditions in the room, this Court does not believe that he can establish that they were deliberately indifferent to it. In order to show deliberate indifference, the plaintiff must show that the defendants not only were aware of the conditions in the room, but that they subjectively considered them to be sufficiently serious as to deny the plaintiff the minimal level of life's necessities, and nonetheless chose to ignore or

take no action to remedy them.  See <u>Farmer v. Brennan</u>, 511 U.S. 825, 835.  The plaintiff has failed to make any such showing here, or to even provide facts which would suggest that such a showing would be possible.  Further, the unchallenged statements of several defendants in affidavits provided to this Court affirmatively attest that the defendants did not subjectively believe the conditions to be in violation of the plaintiff's constitutionally protected rights to life's necessities.  (<u>See</u> ECF No. 33, Ex. 1-7.)

    2.   <u>Serious Medical Condition</u>

The plaintiff also makes a claim for an Eighth Amendment violation based upon deliberate indifference to a serious medical condition.  The magistrate judge recommended that this claim be dismissed because the plaintiff has failed to show that he suffers or suffered from a significant medical condition, as that term is defined in case law.  After <u>de novo</u> review, this Court also affirms this position.

In analyzing this claim, the Court must follow the same two-step analysis used in determining whether the conditions of the multipurpose room qualified as Eighth Amendment violations. First, the plaintiff must show that the medical need to which the defendants allegedly did not attend was "sufficiently serious" to qualify as a deprivation of a basic human need, and secondly, that the defendants acted with a "sufficiently culpable state of mind." <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  In order for the

medical need of an inmate to be "sufficiently serious" to rise to the level of an Eighth Amendment violation if not properly treated, it must be "one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective requirement that prison officials act with a "sufficiently culpable state of mind," may be satisfied when a prisoner is able to show deliberate indifference on the part of the defendants. Wilson, 501 U.S. at 303. Deliberate indifference is "something more than mere negligence [but] . . . something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. As previously stated, the official must actually be aware of the risk of harm, must subjectively assess it as being substantial and serious, and then must deliberately disregard it despite his awareness and assessment of its severity. If the prison official does not subjectively assess the risk as being substantial and serious, he cannot be held liable, notwithstanding any objective irrationality of his assessment. See id. at 837-844.

The plaintiff's claims of serious medical condition are that, as a result of the makeshift toileting facilities in the multipurpose room, the plaintiff suffered emotional distress which caused him to eat and drink less to "stop having to relieve himself." He further argues that he went four weeks without "relieve of hisself [sic] causing bloating of stomach, constipation, headaches, anxiety attacks, change in sleeping patterns, physical exertion, dehydration, dizziness and nausea," and that he "suffered throbbing pain in one side of head and stomach for weeks, with lower back pains . . . [and] continuing abdominal effect of pain and suffering . . . along with migraine headaches." The plaintiff argues for deliberate indifference to these alleged serious medical problems because he informed several of the defendants of his conditions and the medical conditions that were resulting, and he was not seen by a nurse until "5 days later being removed from these deplorable conditions."

However, even if this Court were to assume that the conditions alleged by the plaintiff qualified as "serious medical conditions," as the magistrate judge points out, he has provided no evidence for these contentions whatsoever. In fact, his medical records tell the opposite story. When he was seen by a nurse after his transfer from the multipurpose room, the plaintiff did complain of headaches, but specifically denied suffering from any gastrointestinal problems. (ECF No. 1, Ex. D *9.) Further, the

11

administrative grievances filed by the plaintiff during his time in the multipurpose room do not reflect any complaint about these alleged medical issues whatsoever. The plaintiff does take medications for bloating and gas, but his medical records indicated that he never registered a complaint about gastrointestinal problems until over eight months after he was released from the multipurpose room. As the magistrate judge found, this Court too notes that there is evidence of preexisting gastrointestinal difficulties for this plaintiff as well.

Finally, the evidence before this Court shows that the defendants were not deliberately indifferent to the plaintiff's medical needs, serious or not, throughout the entire time that he has spent in the SHU at USP Hazelton. The defendants acknowledge that complaints were met with instructions to submit a "sick-call slip," and the plaintiff's medical records indicate that all complaints were responded to. There is no evidence to suggest that the plaintiff's complaints of discomfort or pain were ever ignored or untreated. Thus, the plaintiff has failed to sustain an Eighth Amendment claim for deliberate indifference to serious medical conditions, and the magistrate judge's recommendation to dismiss this claim is sustained.

C.   Due Process and Equal Protection

Finally, this Court also affirms the position of the magistrate judge in finding that the plaintiff was not entitled to

due process prior to being moved to the multipurpose room, and that such a move did not violate the plaintiff's equal protection rights.  As the magistrate judge found, inmates do not have a liberty interest in their prison classification, and "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Hewitt v. Helms, 459 U.S. 460, 467-68 (1983).  Further, because "the difference in treatment among prisoners in protective segregation and the general population has a substantial, rational basis in the legitimate interest in prison security," involuntary placement in protective custody does not qualify as an equal protection violation. Allgood v. Morris, 724 F.2d 1098, 1101 (4th Cir. 1984).

The plaintiff repeatedly points to the multiple violations of policy statements and operating procedures in housing him the multipurpose room.  However, such allegations are irrelevant to this Court's review of the plaintiff's case, regardless of their truth or falsity.  This is because, as the magistrate judge points out, a Bivens action "must be founded upon a violation of constitutional rights." Arcoren v. Peters, 829 F.2d 671, 676 (8th Cir. 1987).  Any violations of administrative regulations in place by the Bureau of Prisons or any other agency "does not equate to a constitutional violation." Hovater v. Robinson, 1 F.3d 1963, 1068 n.4 (10th Cir. 1993).

IV. Conclusion

Having reviewed the magistrate judge's report and recommendation de novo, this Court hereby AFFIRMS and ADOPTS the report and recommendation in its entirety.  Accordingly, the defendants' motion to dismiss or, in the alternative, motion for summary judgment is GRANTED.  Further, plaintiff's complaint is DISMISSED WITH PREJUDICE.  It is ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

Should the plaintiff choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit on the issues to which objection was made, he is ADVISED that he must file a notice of appeal with the Clerk of this Court within 60 days after the date of the entry of the judgment order.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the pro se plaintiff by certified mail and to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:   March 5, 2012

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE